UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| **Diane J. Lahuta,** | ) | **COMPLAINT** |
| | ) | |
| **Plaintiff,** | ) | Civil Action No. _____ |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL** |
| **Asset Acceptance LLC** | ) | **DEMANDED** |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

1. This is an action brought by the Plaintiff, Diane J. Lahuta, for actual and statutory damages, attorneys' fees, and costs for Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (hereinafter "FDCPA"), and statutory and actual damages, attorney's fees and costs for the Defendant's violations of the South Carolina Consumer Protection Code, plus treble damages.  The Plaintiff also seeks compensatory and punitive damages for the Defendant's violations of South Carolina common law set forth herein.

## JURISDICTION AND VENUE

2. This Court has Jurisdiction under 15 U.S.C. §1692k (d), and 28 U.S.C. §1331, §1332, and §1367.

3. Venue is proper in the Florence Division because the Plaintiff resides in Horry County and the Defendant transacted business in this division.

## PARTIES

4. The Plaintiff, Diane J. Lahuta, is a resident and citizen of the State of South Carolina, Horry County, and is over the age of twenty-one (21) years.

5. The Defendant, Asset Acceptance, LLC, is a Delaware corporation with its principal place of business located at 28405 Van Dyke Avenue, Warren, Michigan 48093. The Defendant, was in all respects and at all times relevant herein, doing business in the state of South Carolina and in this Division. The Defendant is engaged in the business of collecting consumer debts from consumers residing in Horry County, South Carolina and is a "debt collector," as defined by the FDCPA 15 U.S.C. § 1692a(6).

## FACTUAL ALLEGATIONS

6. Beginning in February 2009, and continuing through March 2009, the Defendant, its agents and employees, have called the Plaintiff multiple times with the intent to harass, annoy, and intimidate the Plaintiff. Additionally, the Defendant has left messages on the Plaintiff's non-exclusive answering machine stating they were calling to collect a debt from the Plaintiff.

7. On February 23, 2009, the Plaintiff received her first verbal communication from Defendant when Rena, one of Defendant's collectors, called and left Plaintiff a message on her answering machine.

8. On February 24, 2009, the Plaintiff received a telephone call from Skylar

Rodriquez, one of the Defendant's collectors. When the Plaintiff asked Rodriquez what the call was in regard to, Rodriquez stated it was regarding the Plaintiff's Chase account that was late. The Plaintiff then asked Rodriquez what specific account she was referring to. Rodriquez responded that it was the Plaintiff's Chase Master Card account, gave a default date and then nastily stated, "Is that clear enough for you now?" Plaintiff told Rodriquez it was not necessary for her to take that tone with her because she was only trying to understand what the call was regarding.

9. On February 27, 2009, Rodriquez left a message on the Plaintiff's answering stating "This is Skylar Rodriquez, a debt collector with Asset Acceptance, return the call to ..." Persons other than the Plaintiff have access to this answering machine. A second call was made by Defendant this same day but no message was left.

10. On or about March 1, 2009, the Defendant sent the Plaintiff two letters regarding Chase accounts. Both letters were exactly the same except for the account numbers, contact person and account balances. These letters are the first written communication the Plaintiff ever received from the Defendant. Copies of the March 1, 2009, letters are attached as Exhibit 1.

11. On March 3, 2009, Paul Doan, a collector with Asset Acceptance, called the Plaintiff. During this conversation, Doan told the Plaintiff that Asset was

collecting on two different Chase accounts. He also claimed to know the date of Plaintiff's last payments, the date the accounts were opened, and the Plaintiff's balances. Doan then provided the Plaintiff her alleged balances which were quite substantial. In response, the Plaintiff requested verification and validation for the accounts. Doan claimed that Asset had already sent written notification to the Plaintiff, but the Plaintiff told him she had never received anything from Asset. Doan then stated he would send verification of the accounts to the Plaintiff.

12. On March 5, 2009, Defendant sent two more letters to the Plaintiff. These letters were allegedly the validation letters the Plaintiff requested, but the letters only reflected the account number, creditor, balance and Plaintiff's name and address. No validation of the accounts was actually provided by Defendant.

13. On March 12, 2009, the Plaintiff received another telephone call from Defendant. This time the caller, Rhonda, claimed that Defendant had provided validation of the debts and wanted to know when the Plaintiff was going to pay. The Plaintiff told Rhonda that she had not received proper validation, only letters identifying the original creditor, the original account number, and the claimed balance. Rhonda then became very rude and angry with the Plaintiff, stating that the Plaintiff owed the money and that if the Plaintiff had

any doubt, she should look up the Defendant on the internet. The Plaintiff again stated that she did not believe she owed the Defendant and that she just wanted proper validation of the accounts. Rhonda finally stated that she would send validation for both accounts.

14. The next call the Plaintiff received from Defendant was on March 16, 2009. In this conversation, Defendant's collector, Wendy, asked the Plaintiff when she was going to start making payments on these two accounts. The Plaintiff responded that she was not going to make a payment until she received proper validation that these were her accounts and that the amounts claimed were correct. In response, Wendy yelled to the Plaintiff that "we don't have to prove anything to you. Stop playing games."

15. On March 16, 2009, the Plaintiff sent Defendant a letter disputing the accounts and specifically requesting validation of the two Chase accounts.

16. Despite the Plaintiff's written dispute and multiple requests for validation, both orally and in writing, the Defendant continued to repeatedly call the Plaintiff demanding payment without sending validation of the alleged debts.

17. The Plaintiff received multiple calls from the Defendant, but no messages were left.

18. On or about March 18, 2009, Defendant sent a letter to Plaintiff on each account again allegedly attaching proper validation of the accounts. However,

      the validation provided was simply the original creditor, original account number, and current balance.

19. On March 20, 2009, the Plaintiff filed a complaint regarding the Defendant's conduct with the South Carolina Department of Consumer Affairs.

20. On March 28, 2009, the Plaintiff received a telephone call from Jeff Jones, a collector with the Defendant. Jones demanded payment to which the Plaintiff replied that she was still waiting on validation of the accounts. Then Jones told the Plaintiff that Defendant was reporting these accounts on her credit reports and that the Plaintiff was just trying to get out of her debts.

21. On or about March 28, 2009, the Plaintiff sent a second letter to Defendant stating she was continuing to receive calls despite her repeated requests for validation of the accounts. Plaintiff again requested validation of the accounts and stated that she disputed the debts.

22. On March 30, 2009, Michelle Lane, a collector with the Defendant, called the Plaintiff to verify her address and verify that the Plaintiff had requested validation on the accounts. The Plaintiff gave Lane her address and confirmed her request. Thereafter Lane replied that she would send out the validation immediately.

23. On April 1, 2009, Defendant sent yet another letter claiming to be validation wherein the original creditor, original account number and balance were

provided.

24. Also on April 1, 2009, Defendant sent Plaintiff letters on each alleged Chase account offering to settle the accounts at a reduced rate.

25. To date, despite the Defendant's numerous promises to provide the requested validation, no validation for either account has been provided to the Plaintiff.

26. In February 2009, Defendant began reporting two accounts on the Plaintiff's credit reports. Defendant is reporting the accounts as trade line accounts rather than collection accounts, and has failed to report the accounts as disputed. To date, Defendant continues to report these accounts without any notice that said accounts are disputed.

## COUNT ONE
## FAIR DEBT COLLECTIONS PRACTICES ACT

27. The Plaintiff adopts the averments and allegations of paragraphs 6 through 26 hereinbefore as if fully set forth herein.

28. The Defendant has engaged in collection activities and practices in violation of the Fair Debt Collection Practices Act (hereinafter referred to as "FDCPA") with respect to the Plaintiff's alleged consumer debt.

29. The Defendant violated §1692c(a)(1) by contacting the Plaintiff at a time or place Defendant knew or should have known was inconvenient to the Plaintiff.

30. The Defendant violated §1692d by engaging in conduct the natural consequence of which was to harass, oppress, or abuse the Plaintiff by using

language the natural consequence of which is to abuse the hearer; and by repeatedly telephoning the Plaintiff with the intent to annoy, abuse, or harass the Plaintiff in an effort to coerce her into paying a debt in violation of §1692d(5).

31. The Defendant violated §1692e by making false and misleading representations to the Plaintiff. At the time the Defendant made these representations to the Plaintiff, the Defendant knew, or should have known, that said representations were false. Said representations made by Defendant was made recklessly, willfully, and/or intentionally.

32. The Defendant violated §1692e(8) by failing to communicate to the credit reporting bureaus and other persons and/or entities that the Plaintiff's disputed debt was disputed.

33. In violation of 15 U.S.C. §1692g(b), after receiving written notification from the Plaintiff that the debt was disputed, Defendant failed to cease collection of the debt, or any disputed portion thereof. Specifically, Defendant continued to report the disputed debts on the Plaintiff's credit reports in an effort to collect the debt. Additionally Defendant continued to attempt to collect the debt without ever providing the requested validation.

34. The Defendant violated the FDCPA by leaving messages for Plaintiff on her answering machine.

35. The Defendant engaged in acts and practices in violation of the FDCPA while conducting collection activity with respect to the alleged debts of the Plaintiff by failing to send the consumer an initial written notice containing a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector in violation of 15 U.S.C. §1692g(a)(3); and a statement that if the consumer notifies the debt collector in writing within the 30-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector in violation of 15 U.S.C. §1692g(a)(4).

36. As a proximate result of the Defendant's actions, the Plaintiff was caused to suffer actual damages for worry, humiliation, fear, frustration, loss of peace and quiet, loss of sleep, anxiety, nervousness, physical sickness, physical pain and mental anguish.

## COUNT TWO
## NEGLIGENT TRAINING AND SUPERVISION

37. The Plaintiff adopts the averments and allegations of paragraphs 6 through 36 hereinbefore as if fully set forth herein.

38. Defendant knew or should have known of the conduct set forth herein which was directed at and visited upon the Plaintiff.

39. Defendant knew or should have known that said conduct was improper and in violation of the FDCPA.

40. Defendant negligently failed to train and supervise collectors in order to prevent said improper conduct.

41. Defendant negligently failed to train and supervise collectors on the FDCPA as it relates to communications with consumers.

42. As a result of the Defendant's negligence, the Plaintiff suffered humiliation, loss of sleep, anxiety, nervousness, physical sickness, physical and mental suffering, pain, and anguish.

## COUNT THREE
## RECKLESS AND WANTON TRAINING AND SUPERVISION

43. The Plaintiff adopts the averments and allegations of paragraphs 6 through 42 hereinbefore as if fully set forth herein.

44. Defendant knew or should have known of the conduct set forth herein which was directed at and visited upon the Plaintiff.

45. Defendant knew or should have known that said conduct was improper and in violation of the FDCPA.

46. Defendant recklessly and wantonly failed to train and supervise collectors in order to prevent said improper conduct.

47. Defendant recklessly and wantonly failed to train and supervise collectors on

the FDCPA as it relates to communications with consumers.

48. As a result of the Defendant's recklessness and wantonness, the Plaintiff suffered humiliation, loss of sleep, anxiety, nervousness, physical sickness, physical and mental suffering, pain, and anguish.

## COUNT FOUR
### (Unconscionable Conduct - §37-5-108)

49. The Plaintiff adopts the averments and allegations of paragraphs 6 through 48 hereinbefore as if fully set forth herein.

50. The Defendant has engaged in unconscionable collection activities and practices in violation of the South Carolina Consumer Protection Code with respect to the Plaintiff's alleged consumer debt.

51. The Defendant violated §37-5-108(5)(b) by repeatedly calling the Plaintiff with the purpose to harass and intimidate the Plaintiff.

52. The Defendant violated §37-5-108(5)(b)(v) by using language the natural consequence of which is to abuse the hearer.

53. The Defendant violated §37-5-108(5)(b)(vii) by causing the Plaintiff's telephone to ring repeatedly during a twenty-four hour period and by engaging the Plaintiff in telephone conversations with the intent to annoy, abuse, or harass the Plaintiff.

54. The Defendant violated §37-5-108(5)(d) by continuing to disclose information to the credit reporting agencies and other third parties concerning the existence

of debts known to be disputed by the Plaintiff without disclosing that the debts were disputed.

55. Upon information and belief, the above violations of the South Carolina Consumer Protection Code by Defendant entitles Plaintiff to not less than one hundred ($100.00) dollars and not more than one thousand ($1,000.00) dollars for each violation, as well as attorney fees and costs.

56. The Plaintiff claims the above statutory damages, attorneys' fees and costs.

## **AMOUNT OF DAMAGES DEMANDED**

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against the Defendant as follows:

A. Statutory damages of $1,000 to the Plaintiff from Defendant for the violations of the FDCPA (15 U.S.C. §1692k);

B. Actual damages for Defendant's violations of the FDCPA;

C. Costs and reasonable attorney's fees from the Defendant pursuant to 15 U.S.C. § 1692k;

D. Compensatory and punitive damages against Defendant in an amount to be determined by a struck jury on Plaintiff's state law claims for damages due to the Defendants' Negligent Training and Supervision, and Reckless and Wanton Training and Supervision;

E. Statutory damages of $1,000 for each of Defendant's violations of the

South Carolina Consumer Protection Code (§ 37-5-108)

F. For Plaintiff's actual damages, attorney fees and costs for Defendant's violations of the South Carolina Consumer Protection Code.

G. For this matter to be heard by a jury.

H. For such other and further relief as the Court may deem just and proper.

/s/ Penny Hays Cauley
Penny Hays Cauley, Fed. ID No. 10323
Attorney for Plaintiff

**OF COUNSEL:**
HAYS CAULEY, P.C.
549 West Evans Street, Suite E
Florence, SC 29501
(843) 665-1717
(843) 665-1718 Facsimile
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

/s/ Penny Hays Cauley
Penny Hays Cauley

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**
Asset Acceptance, LLC
c/o The Corporation Company, registered agent
30600 Telegraph Road, Suite 2345
Bingham Farms, MI 48025